**IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY AT PADUCAH**

| | |
|---|---|
| IN RE: | CASE NO. 17-50222-acs |
| O D JOINER<br>CYNTHIA LEE JOINER | CHAPTER 07 |
| Debtors. | Judge Alan C. Stout |

---

**MOTION FOR RELIEF FROM AUTOMATIC STAY AND ABANDONMENT**

---

Now comes U.S. Bank National Association, claim #1 filed as U.S. Bank National Association ("Movant"), and, through counsel, moves pursuant to 11 U.S.C. Section 362 for an Order granting the motion for relief from the automatic stay and abandonment with respect to certain property owned by the Debtor in which Movant has a security interest, and for an abandonment of the property under § 554 the Bankruptcy Code.  In support of this Motion, Movant states as follows:

1.      The Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code in this Court on March 31, 2017.  The Trustee of the Estate of the Debtors in this case is Mark R. Little, Chapter 7 Trustee.

2.      As of the date of the filing of the petition the Debtor were indebted to the Movant in the amount of $95,706.91, representing the balance due on a note and security agreement.

3.      The indebtedness evidenced by the note and security agreement is secured by a security interest in the following real property at **704 Clarks Ferry Rd, Ledbetter, KY 42058**.

4.    As of May 24, 2017, the Debtors have not made payments to Movant in accordance with the Note secured by the Mortgage.  The Debtors have not made any payments due for the months of April 1, 2017 through May 1, 2017.  If any payments come due and owing, they too shall be incurred.

5.    Per Debtors' Statement of Intentions, Debtors wish to surrender said Property.

6.    One Main Financial may claim an interest is said Property by way of a second mortgage in the amount of $19,000.00

7.    Debtor executed a promissory note secured by a Mortgage. The promissory note is either made payable to Creditor or has been duly endorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the Mortgage.

Movant seeks relief from stay and abandonment on the following grounds:  the interest of Movant is not adequately protected; or the debtor has no equity in the property.

Respectfully submitted,

/s/ David C. Nalley

David C Nalley (85637)
Reisenfeld & Associates, LPA-LLC
Attorney for  Movant
3962 Red Bank Road
Cincinnati, OH 45227
voice: (513) 322-7000
facsimile: (513) 322-7099
e-mail: kybk@rslegal.com

## NOTICE

Please take notice that parties in interest shall have 14 days from the date of this motion within which to file a response to the motion and a request and notice of hearing on such response.  If no response is timely filed, the enclosed Order may be entered by the Court without a hearing on the motion.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all known lien holders have been served a copy of the foregoing has been served this ___2nd___ day of ___June___, 2017, by regular U.S. Mail, postage prepaid, or by electronic filing upon the following:


      O D Joiner, Debtor
      704 Clarks Ferry Rd
      Ledbetter, KY 42058-9730

      Cynthia Lee Joiner, Debtor
      704 Clarks Ferry Rd
      Ledbetter, KY 42058-9730

      One Main Financial
      2700 New Holt Road, Suite C
      Paducah, KY 42001

      Todd A. Farmer
      4975 Alben Barkley Drive, Suite 1
      PO Box 7766
      Paducah, KY 42002-7766

      Mark R. Little, Bankruptcy Trustee
      1917 Versnick Way
      Madisonville, KY  42431

      Charles R. Merrill
      601 West Broadway #512
      Louisville, KY  40202

                    /s/ David C. Nalley
                 ————————————————————
                  David C Nalley (85637)

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | O. D. Joiner |
| Debtor 2 (Spouse, if filing) | Cynthia Lee Joiner |
| United States Bankruptcy Court for the: | Western District of Kentucky (State) |
| Case number | 17-50222-ACS |

## Official Form 410

# Proof of Claim 04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | U.S. Bank National Association<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. | Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? |

| | | | |
|---|---|---|---|
| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>U.S. Bank Home Mortgage, a division of U.S. Bank National Association<br>Name<br>4801 Frederica Street<br>Number        Street<br>Owensboro, Kentucky 42301<br>City            State        ZIP Code<br>Contact phone    800-365-7772<br>Contact email | **Where should payments to the creditor be sent? (if different)**<br><br>U.S. Bank Home Mortgage, a division of U.S. Bank National Association<br>Name<br>4801 Frederica Street<br>Number        Street<br>Owensboro, Kentucky 42301<br>City            State        ZIP Code<br>Contact phone    800-365-7772<br>Contact email |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| | | |
|---|---|---|
| 4. | Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____<br><br>MM / DD / YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? |

**Part 2:**     **Give Information About the Claim as of the Date the Case Was Filed**

| 6. | Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>8614</u> |

| 7. | How much is the claim? | $95,706.91_____. | **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>_____ Money Loaned _____ |

| 9. | Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br><br>**Nature of Property:**<br>☑ Real estate.     If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe:    704 Clarks Ferry Rd, Ledbetter, Kentucky 42058<br><br>**Basis for Perfection:**    Recordation of Lien<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**    $_____<br>**Amount of the claim that is secured:**    $95,706.91<br>**Amount of the claim that is unsecured:**    $_____    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $15.00<br><br>**Annual Interest Rate** (when case was filed)    7.500000%<br>☑ Fixed<br>☐ Variable |

| 10. | Is this claim based on a lease? | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____ |

| 11. | Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | | Amount entitled to priority |
|---|---|---|
| ☐ | Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ | Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C.§ 507(a)(7). | $ _____ |
| ☐ | Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ | Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ | Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ | Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ _____ |

\* Amounts are subject to adjustment on 04/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    __04/25/2017__
                      MM / DD / YYYY

/s/ Natalie E. Lea
     Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Natalie E. Lea | | |
| | First name | Middle name | Last name |
| Title | Authorized Agent for U.S. Bank National Association | | |
| Company | Buckley Madole, P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P. O. Box 9013 | | |
| | Number      Street | | |
| | Addison | TX | 75001 |
| | City | State | ZIP Code |
| Contact phone | (972) 643-6600 | Email | POCInquiries@BuckleyMadole.com |

(12/15)

# Mortgage Proof of Claim Attachment

Case 17-50222-acs    Claim 1-1    Filed 04/25/17    Page 4 of 6

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 17-50222-ACS |
| Debtor 1: | O. D. Joiner |
| Debtor 2: | Cynthia Lee Joiner |
| Last 4 digits to identify: | 8614 |
| Creditor: | U.S. Bank National Association |
| Servicer: | U.S. Bank National Association |
| Fixed accrual/daily simple interest/other: | DSI |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $95,086.22 |
| Interest due: | $605.69 |
| Fees, costs due: | $15.00 |
| Escrow deficiency for funds advanced: | $0.00 |
| Less total funds on hand: | - $0.00 |
| Total debt: | $95,706.91 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | $0.00 |
| Prepetition fees due: | $15.00 |
| Escrow deficiency for funds advanced: | $0.00 |
| Projected escrow shortage: | $0.00 |
| Less funds on hand: | - $0.00 |
| Total prepetition arrearage: | $15.00 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | $781.77 |
| Monthly escrow: | |
| Private mortgage insurance: | |
| Total monthly payment: | $781.77 |

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Starting Balance | | $0.00 | | | | | | $97,095.45 | $0.00 | $0.00 | $0.00 | $15.00 |
| 06/01/2016 | | $11.00 | $11.00 | Electronic Payment Fee | 06/01/2016 | $0.00 | | | | $11.00 | | $97,095.45 | $0.00 | $0.00 | $0.00 | $15.00 |
| 06/01/2016 | | $781.77 | | Payment Received | 06/01/2016 | $0.00 | | | | | $781.77 | $97,095.45 | $0.00 | $0.00 | $0.00 | $15.00 |
| 06/01/2016 | | $781.77 | | Payment Received | 07/01/2016 | ($781.77) | $349.70 | $432.07 | | | | $96,745.75 | $0.00 | $0.00 | $0.00 | $15.00 |
| 06/01/2016 | $781.77 | | | Regular Payment Due | 07/01/2016 | $0.00 | | | | | | $96,745.75 | $0.00 | $0.00 | $0.00 | $15.00 |
| 06/02/2016 | | | | Principal Applied | 07/01/2016 | ($781.77) | $781.77 | $781.77 | | | ($781.77) | $95,963.98 | $0.00 | $0.00 | $0.00 | $15.00 |
| 06/03/2016 | | | $15.00 | NSF Fee | 07/01/2016 | ($781.77) | | | | | | $95,963.98 | $0.00 | $0.00 | $0.00 | $30.00 |
| 06/03/2016 | | ($781.77) | | Principal Reversal | 07/01/2016 | $0.00 | ($781.77) | ($781.77) | | | | $96,745.75 | $0.00 | $0.00 | $0.00 | $30.00 |
| 07/01/2016 | | $781.77 | | Payment Received | 08/01/2016 | ($781.77) | $187.02 | $594.75 | | | | $96,558.73 | $0.00 | $0.00 | $0.00 | $30.00 |
| 07/01/2016 | $781.77 | | | Regular Payment Due | 08/01/2016 | $0.00 | | | | | | $96,558.73 | $0.00 | $0.00 | $0.00 | $30.00 |

Official Form 410 A                    Mortgage Proof of Claim Attachment                    Page 1 of 3

# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 17-50222-ACS

Debtor 1: O. D. Joiner

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | Account Activity | | | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied / Amount Incurred | | | | L. Unapplied funds | Balance After Amount Received or Incurred | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | C. Funds received | D. Amount incurred | E. Description | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 07/12/2016 | | | ($15.00) | NSF Fee | | $0.00 | | | | | | $96,558.73 | $0.00 | $0.00 | $15.00 | $0.00 |
| 08/01/2016 | | $781.77 | | Payment Received | 08/01/2016 | ($781.77) | $168.38 | $613.39 | | | | $96,390.35 | $0.00 | $0.00 | $15.00 | $0.00 |
| 08/01/2016 | $781.77 | | | Regular Payment Due | 09/01/2016 | $0.00 | | | | | | $96,390.35 | $0.00 | $0.00 | $15.00 | $0.00 |
| 09/01/2016 | $781.77 | | | Regular Payment Due | 09/01/2016 | $781.77 | | | | | | $96,390.35 | $0.00 | $0.00 | $15.00 | $0.00 |
| 09/01/2016 | | $781.77 | | Payment Received | 10/01/2016 | $0.00 | $169.45 | $612.32 | | | | $96,220.90 | $0.00 | $0.00 | $15.00 | $0.00 |
| 10/01/2016 | $781.77 | | | Regular Payment Due | 10/01/2016 | $781.77 | | | | | | $96,220.90 | $0.00 | $0.00 | $15.00 | $0.00 |
| 10/01/2016 | | $781.77 | | Payment Received | 11/01/2016 | $0.00 | $150.81 | $630.96 | | | | $96,070.09 | $0.00 | $0.00 | $15.00 | $0.00 |
| 10/03/2016 | | $781.77 | | Payment Received | 12/01/2016 | ($781.77) | $210.86 | $570.91 | | | | $95,859.23 | $0.00 | $0.00 | $15.00 | $0.00 |
| 11/01/2016 | $781.77 | | | Regular Payment Due | 12/01/2016 | $0.00 | | | | | | $95,859.23 | $0.00 | $0.00 | $15.00 | $0.00 |
| 11/01/2016 | $781.77 | | | Regular Payment Due | 12/01/2016 | $781.77 | | | | | | $95,859.23 | $0.00 | $0.00 | $15.00 | $0.00 |
| 12/01/2016 | | $781.77 | | Payment Received | 01/01/2017 | $0.00 | $192.47 | $588.30 | | | | $95,666.76 | $0.00 | $0.00 | $15.00 | $0.00 |
| 12/01/2016 | $781.77 | | | Regular Payment Due | 01/01/2017 | $781.77 | | | | | | $95,666.76 | $0.00 | $0.00 | $15.00 | $0.00 |
| 01/01/2017 | | $781.77 | | Payment Received | 02/01/2017 | $0.00 | $134.68 | $647.09 | | | | $95,532.08 | $0.00 | $0.00 | $15.00 | $0.00 |
| 01/03/2017 | | $781.77 | | Payment Received | 03/01/2017 | ($781.77) | $212.50 | $569.27 | | | | $95,319.58 | $0.00 | $0.00 | $15.00 | $0.00 |
| 02/01/2017 | $781.77 | | | Regular Payment Due | 03/01/2017 | $0.00 | | | | | | $95,319.58 | $0.00 | $0.00 | $15.00 | $0.00 |
| 02/01/2017 | $781.77 | | | Regular Payment Due | 03/01/2017 | $781.77 | | | | | | $95,319.58 | $0.00 | $0.00 | $15.00 | $0.00 |
| 03/01/2017 | | $781.77 | | Payment Received | 04/01/2017 | $0.00 | $233.36 | $548.41 | | | | $95,086.22 | $0.00 | $0.00 | $15.00 | $0.00 |
| 03/31/2017 | | | | Petition Date | 04/01/2017 | $0.00 | | | | | | $95,086.22 | $0.00 | $0.00 | $15.00 | $0.00 |

| Fill in this information to identify the case: | | | | |
|---|---|---|---|---|
| Debtor 1 | O. D. Joiner | | | |
| Debtor 2 (Spouse, if filing) | Cynthia Lee Joiner | | | |
| United States Bankruptcy Court for the: | Western | District of | Kentucky | |
| | | | (State) | |
| Case number | 17-50222-ACS | | | |

# Mortgage Proof of Claim Attachment: Addendum

## Additional Claim Itemization:

| Loan History Date | Actual Date Incurred | Description | Amount |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## POC Special Language:

Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

**Borrower's Name(s) and Addresses:**
O D JOINER
CYNTHIA L JOINER
704 CLARKS FERRY RD
LEDBETTER, KY 42058

**Property Address:**
704 CLARKS FERRY RD
LEDBETTER, KY 42058

**Lender's Name and Address:**
U.S. Bank N A
1850 Osborn Ave Oshkosh, WI 54902

Date _____ 12/21/06

### 1. BORROWER'S PROMISE TO PAY

"I," "me" and "my" means each Borrower who signs this Note, and each other person or legal entity who agrees to pay it, such as a guarantor. "You" and "your" mean the Lender, who is U.S. Bank National Association.

I promise to pay to you, or your order, the principal sum of $ 111807.33 _____ plus interest and other charges as described below. I will make payments toward this debt as provided below in the form of cash, check, money order or electronic payment in U S dollars. I understand that you may transfer this Note.

### 2. INTEREST

Interest will accrue on the unpaid balances of principal remaining from time to time at either the fixed or variable rate as provided below. Interest will begin to accrue on ____ 04/21/07 ____
At that time the simple interest rate, will be ____ 7.500 % per year. This rate will remain in effect until 04/21/37

☐ **Variable (Adjustable Rate):** Beginning _____
_____ and
_____
_____

thereafter the interest rate on this loan will change (these are the "interest rate change dates") and will then be the sum of the Index rate, described below, and the Margin described below that:

The **Index Rate** that will determine the interest rate for this loan is known as:

the average of interbank offered rates for one year U S dollar denominated deposits in the London market based on the quotation of major banks known as the London Interbank Offered Rate (**LIBOR**),

as published in the *"Money Rates"* section of The Wall Street Journal.

The Index Rate that will be used for this loan will be the LIBOR rate in effect for this loan _____ days before each of the interest rate change dates. The *LIBOR rate in effect* is determined from the LIBOR value published on the first business day of a calendar month, for the second business day of a calendar month, until the second business day of the next calendar month. (You use this index value in advance of the rate change date because you need to give me advance notice of my payment, which will change if the rate changes.

**Example:** Let us assume that June 1 and 2 are business days, and that July 1 is also a business day. The LIBOR RATE published on June 1 will be used for all loans whose interest rate change dates occur forty five (45) days after June 2 through 45 days after July 1

Express® © 2004 Bankers Systems Inc St Cloud MN
US Bank Manufactured Home Note Form USB-NMH-CAX 2/28/2005

**Margin:** My interest rate as of the change dates will equal the Index Rate in effect ____ ____ days before the interest rate change date plus a margin of _____
_____ _____, the total rounded up to the next 1/8th % (0.125%) unless the interest rate cap (next) limits the amount of change in the interest rate

**Rate Caps:** My interest rate cannot increase or decrease by more than _____ _____ ____,
on any interest rate change date or by more than _____
_____ ____ over the term of this Note.

**Substitute Index:** If this Index Rate is no longer available, you can choose a new index that is based on comparable information.

**Variable Rate Payment Changes:** With the first payment due after an interest rate change date (usually a month) my monthly payment amount will be adjusted (assuming there is a rate change) to amortize the debt over the scheduled term to maturity.

**Fixed Rate Conversion Option:** If I am not in default, I may convert my variable interest rate to a fixed simple interest rate for the remainder of the term of this Note at any time beginning _____ years and ending _____ years from the date of this Note. I must give you written notice of my desire to make this conversion, and pay a non-refundable fixed rate conversion fee of $ ____ ____ ____

The rate I will convert to will be the fixed rate you are then offering (on the day you receive my written conversion request and the non-refundable conversion fee) on transactions having the same parameters as my original transaction (U.S Bank Manufactured Housing Finance rate sheet is where this information will be collected You will tell me the rate I can convert to when I ask.) **The rate you will offer under this conversion rule will not be subject to the limitations on rate increases or decreases that apply while the variable rate is in effect.**

If and when I make this conversion, my payments will be adjusted to provide for a payment stream that will produce substantially equal monthly payments, at the conversion rate to the originally scheduled maturity date of this Note

### 3. ADDITIONAL FINANCE CHARGES

I agree to pay finance charges (in addition to interest) totaling $ 5729.50 _____
Of these charges
☐ $ _____ was paid at or before closing
☒ $ ____ _____ 5729.50 was not paid and is included in the principal amount shown above

I understand these additional finance charges are fully earned, and if I prepay this Note in full, will not be refunded

### 4. FACT ACT NOTICE(S)

You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults on my account may be reflected in my credit report.

☐ If Checked Terms provided reflect an adjustment to the lowest annual percentage rate available for this product. This adjustment reflects a higher rate of interest or finance charge due to information contained in a consumer credit report. You obtained this report from, and I may obtain a free copy of it by contacting:

O.D.J
C.L.J

## 5. POST-MATURITY INTEREST

After maturity the unpaid balance of principal of this Note will continue to earn interest at the same rate in effect at maturity, or, if this is a variable rate note, by the same method of determining the rate as applied before maturity, until this Note is paid in full

## 6. PAYMENTS

(A) Time and Place of Payments: I agree to pay this Note as follows

☑ Monthly: In 360 _____ monthly payments beginning 05/21/07 _____ and on the same day of each month thereafter, of $ 781 77 _____ each, and a final payment of $ 781 77 _____ due _____ 04/21/37

**YOU ARE NOT OBLIGATED TO REFINANCE THE FINAL PAYMENT.**

If this is a variable (adjustable) rate note, the payment amounts shown in this section will change if and when the rate changes, as provided in section 2 (**Variable Rate Payment Changes**) and may also change if I elect to convert to a fixed rate (**Fixed Rate Conversion Option**)

☐ Bi-weekly: In _____ bi weekly payments (every 14 days) beginning __ _____ and every 14 days thereafter, in the amount of $ _____ each, and a final payment of $ _____ due _____ .

Bi-Weekly Payment Default: I will be in default if any bi-weekly payment is not paid in full on or before its due date. In the event of such default, my payment schedule will change (convert) to monthly payments, effective as of the first day following my last timely bi-weekly payment (the conversion date).

You will recalculate my payment as of the conversion date, based on the interest rate, my principal balance as of that date, and a revised maturity date to provide for substantially equal monthly payments. My monthly payments will begin 30 days after the conversion date, and on the same day of each month thereafter until the new maturity date. My new maturity date will be determined by calculating the number of whole months remaining in the original (bi-weekly) schedule of payments as of the conversion date, and adding those number of months to the conversion date. (My monthly payment will be more than the sum of the two bi-weekly payments.)

(B) Application Of Payments: You will apply each payment I make first to accrued interest, and then to principal. You will credit my payments when you actually receive them, late payments will increase the amount of interest I will have to pay and the amount of my final payment, and will incur a late charge; early payments and prepayments will reduce the interest I will have to pay and my final payment(s)

(C) Place of Payments: I will make my payments to you at

U.S. Bank N.A.

P.O. Box 790179, St Louis, MO 63179-0179

You may change this place of payment after reasonable notice

## 7. ☒ CONSTRUCTION LOAN

If checked, the loan that this Note evidences is a loan to finance the construction of a dwelling on real property, and is subject to a separate construction loan agreement Here is a brief (and incomplete) description of some of the features of the construction loan agreement

1. the principal amount of this Note is the maximum amount you have committed to lend the Borrower(s);
2. the loan amount will be advanced in a number of advances as construction progresses;
3. the day interest begins to accrue is the first day after the completion of construction signified by the last advance of the loan amount;
4. the first scheduled payment date, and all the other scheduled payments are dependent on the completion and last advance of the loan amount;

© 2004 Bankers Systems, Inc., St Cloud, MN
US Bank Manufactured Home Note Form USB-NMH-CA2 2/28/2005

5. if this is a variable rate loan, then rate changes will take effect on the same day of _____ as the day that interest actually begins to accrue

If all the funds committed are not borrowed, the periodic payment amounts will be adjusted accordingly to amortize the loan over the same time period.

If the actual completion date occurs before the estimated date, the interest accrual date, first payment date, other payment dates and the variable rate change dates (if this is a variable rate note) will also be adjusted accordingly.

If construction extends beyond the estimated completion date, the construction loan agreement provides for the consequences, which may include a fee for postponing the accrual of interest and payments.

All the potential changes can be accomplished by notice and separate documents, but I agree to sign a new, replacement note if and when the final details are known and if you deem that necessary or appropriate

## 8. I CAN PREPAY

I can prepay this Note in whole or in part at any time without penalty. Any partial prepayment will not excuse or reduce any scheduled payment until this Note is paid in full

For variable rate transactions, my payment amounts are "scheduled" each following year between 45 and 75 days (approximately) before my interest rate change date, which is a month before my new payment amount is due. If I make a partial prepayment after you schedule my monthly payment for the next year, and before the new rate takes effect, at your discretion, such prepayment may not affect my payment amounts until the next following year (unless this Note is paid in full, of course)

For example: Assume that my rate is variable and can change on July 1 of each year. My rate will be determined by the index value as of the previous May 1. If I make a partial prepayment between May 1, 2005 and July 1, of 2005, that prepayment will not begin to affect my payment amounts until August 1, of 2006.

If I intend to make a prepayment, it is my duty to tell you I am doing so. Any payment designated by me as a prepayment will first reduce any accrued interest, any delinquent principal payments, and any fees that may be owed before the balance of any designated prepayment, is applied to the outstanding principal balance.

## 9. LOAN CHARGES

If a law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges agreed to, collected or to be collected in connection with this loan exceed the permitted limits, then:

(i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and

(ii) any sums already collected from me which exceeded permitted limits will be refunded to me

You may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 10. IF I FAIL TO PAY AS REQUIRED

If the original schedule of payments is every 14 days (bi-weekly), see the section above titled Bi-Weekly Payment Default The following sections apply to all notes providing for monthly payments, and to notes that provided for bi-weekly payments if the note is converted to monthly payments as provided above

(A) Default: I will be in default if

(i) I fail to make a scheduled payment in full when it is due; or

(ii) I fail to keep any other promise I have made or a representation I have made and your prospect of payment performance, or realization on any collateral is significantly impaired

(iii) Due on Sale You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of a contract for the creation or a transfer or sale of the property securing this Note This right is subject to the restrictions imposed by federal law and regulations (12 C F R 591), as applicable

0·D5
C·R9

**(B) Late Charge for Overdue Monthly Payments:** If you have not received the full amount of any monthly payment by the end of __15__ calendar days after the date it is due, I will pay a late charge to you. The amount of the charge will be 5% of the portion of the required payment not made

**(C) Dishonored Payment Charge:** If a check, draft or electronic payment on this Note is dishonored by my financial institution, I will pay you a dishonored payment charge of $ __15.00__ I will pay this late charge promptly but only once on each late payment.

**(D) Acceleration, Cure and Reinstatement:** If I am in default, you have all the rights provided by law to collect the amount I owe you. These rights include, for example, subject to state law, and the type of collateral securing this loan
  a. to make the entire unpaid balance of principal due in advance of the scheduled due date (accelerate).
  b. to foreclose on property securing this loan,
  c. to set off the amount owing against deposit accounts I may have with you;
  d. if property securing this loan is not sufficient to pay the debt, then to collect the deficiency from me when permitted by law

Your rights will be subject to what rights I may have under law to cure a default, reinstate the schedule of payments, and to get notice of any such rights. (Nothing here is intended to misrepresent or diminish the rights I may have by law. The law of the state where the property is located will generally control these issues )

**(E) No Waiver By You:** If I default on this loan but you do not exercise all your rights at that time, you will still have the right to do so if I am in default at a later time

**(F) Payment of Your Costs and Expenses:** If you require me to pay immediately in full (acceleration) as described above, you will have the right to be paid back by me for all of your costs and expenses in enforcing this Note and realizing on any property securing it to the extent not prohibited by applicable law.

In the event of my bankruptcy, these costs will include your reasonable attorney's fees for an attorney who is not your salaried employee in the bankruptcy proceedings

These costs and expenses will include (and not be limited to) your reasonable attorney's fees for an attorney who is not your salaried employee, as provided below (with limitations and exceptions as listed), and as further limited by state law depending on the method of collection or realization on any property securing this Note

In **Arizona, California, Idaho, Illinois, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington and Wyoming** these costs will include your reasonable attorney's fees.

In **Arkansas** these costs will include your reasonable attorney's fees not to exceed 10% of the amount of principal and accrued interest

In **Colorado, Kansas, Maine, North Carolina, Oklahoma and South Carolina** these costs will include your reasonable attorney's fees not to exceed 15% of the unpaid debt for collection after default

In **Delaware** these costs will include reasonable attorney's fees after default, court costs, alternative dispute resolution costs, and other collection costs, including fees and charges of collection agencies.

In **Florida** these costs include your reasonable attorney's fees of ten percent (10%) of the principal sum due on this note or such larger amount as may be reasonable and just

In **Georgia** these costs include attorney's fees of 15 percent of the principal and interest then owed. I waive and renounce any exemption I may be entitled to under Georgia law as to any property that secures this debt. I assign any such exemption to you

Ex∆ereS © 2004 Bankers Systems, Inc , St Cloud, MN
US Bank Manufactured Home Note - Form US2-NMH-CAX  2/28/2005

In **Indiana** these costs will include your reasonable attorney's fees, and in any collection efforts, I waive any relief I might be entitled to from evaluation and appraisement.
In **Iowa, Nebraska, North Dakota, Ohio, New Hampshire, and West Virginia** these costs will not include attorney's fees.
In **Louisiana**, these costs include your reasonable attorney's fees, not to exceed 25% of the unpaid debt after default and referral to an attorney for collection
In **Connecticut, Missouri and Alabama** these costs will include your reasonable attorney's fees of the amount due and payable under this Note if it is necessary to bring suit of 15%.
In **Texas** these costs will include your reasonable attorney's fee if assessed by a court.

**11.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give you a notice of my different address.
Any notice that I must give to you under this Note will be given by delivering it or by mailing it by first class mail to you at the address stated in section 6(C) above or at a different address if I am given a notice of that different address.

**12.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over the obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. You may enforce your rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**13.  WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require you to demand payment of amounts due "Notice of dishonor" means the right to require you to give notice to other persons that amounts due have not been paid

**14.  SECURITY AND INSURANCE**
(A) This note is secured by a mortgage or deed of trust on real property
(B) **Insurance:** I agree to buy the insurance coverages on the Property securing this Note against the risks and for the amounts you require. I will name you as loss payee on any such policy. If there is an insured loss, you may require added security on this loan if you agree that insurance proceeds may be used to repair or replace the Property.
I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference
I will buy the insurance from a firm authorized to do business in the appropriate state The firm will be reasonably acceptable to you I will keep the insurance until the debts secured by this agreement are paid.
(C) **Collateral Protection Insurance:** Unless I provide you with evidence of the insurance coverage required by my agreement with you, you may purchase insurance at my expense to protect your interests in my collateral This insurance may, but need not, protect my interests The coverage that you purchase may not pay any claim that I make or any claim that is made against me in connection with the collateral I may later cancel any insurance purchased by you, but only after providing you with evidence that I have obtained insurance as required by our agreement If you purchase insurance for the collateral, I will be responsible for the costs of that insurance, including interest at the rate(s) on this Note, and any other charges you may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance The costs of the insurance may be added to my total outstanding balance or obligation The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own I agree that the cost of such insurance will be due immediately

## 15. MISCELLANEOUS

This Note is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this Note may, on behalf of the maker of this Note, create a microfilm or optical disk or other electronic image of this Note that is an authoritative copy as defined in such law. The holder of this Note may store the authoritative copy of such Note in its electronic form and then destroy the paper original as part of the holder's normal business practices. The holder, on its own behalf, may control and transfer such authoritative copy as permitted by such law.

This notice applies to Missouri customers specifically and is generally true for all customers:

ORAL AGREEMENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

**SECURITY INTEREST IN DEPOSIT ACCOUNTS AT U.S. BANK, N.A. -**

Governing law: For purposes of this security interest, we agree that the law of the state of North Dakota will control as to the creation, perfection, and effect of perfection of the interest granted in this paragraph (Technically speaking, we are agreeing that North Dakota is your jurisdiction, solely for purposes of this security interest in deposit accounts, as provided in N.D. Stat. § 41-9-24.)

Grant: I grant to you a security interest in any and all deposit accounts (demand, time, savings, passbook, and specifically including but not limited to any certificated time accounts) I currently have or hereafter create with you (U.S. Bank, N.A.).

Exception: This grant does not apply to accounts that constitute a part of any qualified retirement plan (such as an Individual Retirement Account), any retail repurchase agreement, or any account where my only right is clearly and solely in a representative capacity.

Secures: This security interest secures the payment of this debt and any other debt I may owe you, now or hereafter

Usage: You have the right to restrict or prohibit further withdrawals from my accounts, and to apply such funds toward payment of the secured debts. While you have the right to do this at any time, and without notice, it is your present intention to exercise these rights only in the event of my default on this or any other secured obligation, and to provide notice to me

Setoff: I also acknowledge that you have a right of setoff. This right of setoff, in the event of a conflict with the security interest granted here, will be subordinate to this security interest

Authentication By U.S. Bank, N.A.: This is intended as an authentication of this control agreement
U.S. BANK N.A.

DUE ON SALE. Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

IF THE PROPERTY IS LOCATED IN FLORIDA: The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness

### NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The bank can collect this debt from you without first trying to collect from the borrower. The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing* your wages, etc. If this debt is ever in default, that fact may become a part of your credit record

This notice is not the contract that makes you liable for the debt.

*Garnishment is not a remedy available in Pennsylvania, South Carolina or Texas.

To contact the Lender, U.S. Bank N.A. about this account call
1-800-USBANKS

The following notice applies when the property is located in Texas.

This contract is subject in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 N. Lamar Blvd., Austin, Texas 78705-4207; (800) 538-1579; (512) 936-7600, and can be contacted relative to any inquiries or complaints.

### NOTICE TO THE CONSUMER

Do not sign this document before you read it or if it contains any blank spaces

You are entitled to a copy of the document you sign. Under the law you have the right to pay off in advance the full amount due and obtain a substantial refund of the credit charge. Keep this document to protect your legal rights

### 16. GOVERNING LAW

You are a national bank located in California. The interest rate, fees and related charges that you can charge for this loan are pursuant to the law of the state of California, and federal law, regardless of where this loan is made or where I live. As for other issues, the law of my state of residence and the law of the state where any property is located will apply

The fact that any part of this Note cannot be enforced will not affect the rest of this Note. Any change to this Note or any agreement securing this Note must be in writing and signed by you and me

Experts® © 2004 Bankers Systems, Inc., St. Cloud, MN
US Bank Manufactured Home Note  Form USB-NMH-CAX  7/28/2005

o.D.J
c88

**SIGNATURES**

I agree to the terms set out on pages 1 thru 5 of this agreement. I acknowledge that I have received a copy of this document on today's date.

Signature

X _O D Janer_

Name: O D JOINER

Signature

X _Cynthia L Joiner_

Name: CYNTHIA L JOINER

Signature

X _____

Name

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

ExGera® © 2004 Bankers Systems Inc. St. Cloud, MN
US Bank Manufactured Home Note - Form USB NMH CRX 7/28/2005

a

When recorded mail to:
First American Title Insurance Co
100 Mallard Creek Rd., Suite 400
Louisville, Kentucky 40207

——— [Space Above This Line For Recording Data] ———

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated ............... 12/21/06 ..............
......................................., together with all Riders to this document.
(B) "Borrower" is O D JOINER ...............................................................................
......................... CYNTHIA L JOINER , husband & wife .....................................
.............................. . Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is U.S. Bank N. A. ..............................................................................
........................ . Lender is a ... ........................ National Banking Association ...........
organized and existing under the laws of ....................... United States of America ...................
Lender's address is 1850 Osborn Ave ....................................................................
Oshkosh, WI 54902 .................... . Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated ........... 12/21/06 ........... .
The Note states that Borrower owes Lender ...........................................................
.............................................................. Dollars (U.S. $ ........... 111807.33 ...........) plus
interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the
debt in full not later than ................. 04/21/37 .................. . This Security Instrument secures
150% of the principal amount of the Note, but any amount secured in excess of the amount
stated in the second sentence of this paragraph must be a "Protective Advance" as defined by
Section 26 hereof (or, if the rate of interest is adjustable, may be interest added to principal,
commonly called "negative amortization").
(E) "Property" means the property that is described below under the heading "Transfer of
Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower   The
following Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider  ☐ Condominium Rider         ☐ Second Home Rider
☐ Balloon Rider          ☐ Planned Unit Development Rider  ☐ Other(s) [specify] .............
☐ 1-4 Family Rider       ☐ Biweekly Payment Rider
(H) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well
as all applicable final, non-appealable judicial opinions.

O.D.J
C&J

KENTUCKY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems, Inc., St. Cloud, MN  Form MD-1-KY  5/10/2004
rcf  1/2001                                    (page 1 of 12 pages)

Form 3018  1/01 (rev. 10/01)

O.D.J   C&J

147

(I) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "**Escrow Items**" means those items that are described in Section 3.

(L) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the ...................................................
[Type of Recording Jurisdiction]

of ...............................................................;
[Name of Recording Jurisdiction]

See Exhibit "A"

which currently has the address of .704 CLARKS FERRY RD......................................................
[Street]

.........LEDBETTER........., Kentucky ...............42058................... ("Property Address"):
[City]                                               [Zip Code]

**KENTUCKY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3018 1/01 (rev. 10/01)

O.D.J

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold

KENTUCKY—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**        Form 3018  1:01 (rev. 10/01)

Bankers Systems, Inc., St. Cloud, MN Form MD-1-KY 5/10/2004                       (page 3 of 12 pages) _____ ___ ____ _

**149**

payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice

identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's

KENTUCKY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3018  1:01 (rev. 10/01)

Bankers Systems, Inc., St. Cloud, MN  Form MD-1-KY  5/10/2004     (page 5 of 13 pages)

**151**

ODJ c††

**152**

rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was

KENTUCKY—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     Form 3018 1:01 (rev. 10/01)

Bankers Systems, Inc., St. Cloud, MN Form MD-1-KY 6-10-2004

*(page 6 of 12 pages)*



required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender for any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has--if any--with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums

KENTUCKY—Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3018 1/01 (rev. 10/01)

Bankers Systems, Inc., St. Cloud, MN Form MD-1-KY 5/10/2004     (page 1 of 12 pages) __ ____ . __

O.D.J
C.XA

**154**

secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security

KENTUCKY—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3018  1:01 (rev. 10/01)

Bankers Systems, Inc., St. Cloud, MN  Form MD-1-KY 6/10/2004    (page 8 of 12 pages)

O.D.S. C88

Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

156

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

**KENTUCKY** Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3018 1/01 (rev. 10/01)

Bankers Systems, Inc., St. Cloud, MN Form MD-1-KY 5/16/2004          (page 10 of 12 pages)



Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.

25. Taxes and Assessments on Mortgage Insurance Premiums. If mortgage insurance premiums are required to be paid by Borrower pursuant to Section 10, then in addition to such premiums, Borrower shall pay all taxes and assessments thereon for so long as Borrower is required by Lender to pay the premiums. All taxes and assessments on premiums due and payable by Borrower shall be considered an Escrow Item and shall be paid by Borrower to Lender in the manner provided for Escrow Items in Section 3.

26. Protective Advances. This Security Instrument secures not only the initial advance under the Note, but also all Protective Advances. "Protective Advances" mean any advances to maintain and protect the Property and/or protect Lender's rights in the Property made by Lender or by any successors or assigns of Lender, including, without limitation, any sums, with interest, advanced under Sections 5, 9, or 14 hereof: (a) to pay any Escrow Items; (b) to pay any sums secured by a lien or encumbrance on the Property without which payment the secured position of Lender, including the priority of this Security Instrument, or any successor or assign of Lender might be jeopardized; (c) to secure, repair, maintain, protect or preserve the Property, or Lender's interest in the Property and rights under this Security Instrument; or (d) to pay any and all expenses incident to the collection of the indebtedness secured by this Security Instrument and the foreclosure thereof by judicial proceedings, or otherwise, pursuant to Applicable Law, whether the Property is still owned by the Borrower or is owned by a Successor in Interest of Borrower.

KENTUCKY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3018  1/01 (rev. 10/01)

Bankers Systems, Inc., St. Cloud, MN  Form MD-1-KY  5/10/2004          (page 11 of 12 pages) _____   . _____

O.D.J.
C.Z.V.

158

To the extent that any Protective Advances are deemed to be "future advances" or "additional indebtedness" within the meaning of KRS 382.520, this Security Instrument secures such future advances or additional indebtedness, provided that the total indebtedness at any one time outstanding shall not exceed 150% of the original principal amount of the Note, with interest thereon, and whether or not evidenced by notes, accounts or obligations of any kind whatsoever. It shall be a default under this Security Instrument if Borrower requests a release, in the manner provided by KRS 382.520, of any portion of the lien securing any of the additional indebtedness secured by this Security Instrument pursuant to KRS 382.520 prior to the date that all of the obligations secured by this Security Instrument have been paid and discharged and the Note and this Security Instrument have been terminated, and Borrower hereby waives any and all right to request such a release to the maximum extent permitted by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

.................................................... (Seal)
O D JOINER                                          -Borrower

.................................................... (Seal)
CYNTHIA L JOINER                                    -Borrower

———————— [Space Below This Line For Acknowledgment] ————————

STATE OF KENTUCKY

County of ...McCracken....

The foregoing instrument was acknowledged before me this 21st day of Dec 2006
(date) by ...O D Joiner & Cynthia L Joiner, husband & wife
(person acknowledged). I certify (1) that the person acknowledging appeared before me and acknowledged that he or she executed the instrument, and (2) that I knew the person acknowledging or had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

My Commission Expires: 7/11/10

.................................................... 
                                          Notary Public

This instrument was prepared by U.S. Bank N. A.
of 5787 Chesapeake Court, Suite 205 San Diego, CA 92123

Signed ....................................................

**Prepared By:**
**First American Title Insurance Company**

**Shawn R. Freibert**
**100 Mallard Creek Rd., Suite 400**
**Louisville, Kentucky 40207**
**502.315.1650**

KENTUCKY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems, Inc., St. Cloud, MN Form MD-1-KY 6/10/2004

Form 3018 1/01 (rev. 10/03)
(page 12 of 13 pages)

# EXHIBIT "A"

Situated on the Old Ferry Road and about one-half (1/2) mile West of the intersection of U.S. Highway #60 and more particularly described as follows:

BEGINNING at the Northwest corner of Roy Thorning's property and the Old Ferry Road (said corner being 250 feet west of the west side of the right-of-way of a cross road running from U.S. Highway #60 to the Old Ferry Road) and running West with the Old Ferry Road for a distance of 130 feet; thence in a Southerly direction for 400 feet to a corner; thence in an Easterly direction for 130 feet to a corner (said corner being 250 feet West of the West side of right-of-way of a cross road running from U.S. Highway #60 to the Old Ferry Road); thence in a Northerly direction for 400 feet to the point of beginning, (200 feet to the latter distance with the line of Roy Thorning).

Also secured with the aforementioned property is a 2007 Sunshine Multi New 870*70 Mobile Home with Serial Number ALS14339AB which is permanently affixed and attached to the land and is part of the real property.

BEING the same property conveyed to O.D. Joiner and Cynthia Joiner, husband and wife, to the survivor of them, by deed dated September 22, 2004 and recorded on September 29, 2004, in Deed Book 215, Page 586, in the Office of the Livingston County Clerk.

160

**STATE OF KENTUCKY, COUNTY OF LIVINGSTON**

I, Carroll D. Walker, Clerk of the County for the County and State aforesaid, certify that the foregoing instrument was on the 22 day of January, 2007 at 11:35 o'clock A.M. lodged for record, whereupon the same, with the foregoing, and this certificate have been duly recorded in my office in Mortgage Book 341 page 147

Given under my hand this 22 day of January 2007.

CARROLL D. WALKER

By _____ D.C.

Pd. Recording Fee 47.00 Deed Tax _____